UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COREY HINTON, #646238,

        Petitioner,

v.
                                CASE NO. 2:15-CV-10687
                                HONORABLE DENISE PAGE HOOD

ROBERT NAPEL,

        Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

### I. Introduction

Michigan prisoner Corey Hinton ("Petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is being held in violation of his constitutional rights. Petitioner was convicted of first-degree felony murder, Mich. Comp. Laws § 750.316, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a jury trial in the Wayne County Circuit Court. He was sentenced to life imprisonment without parole, a concurrent term of one to seven and one-half years imprisonment, and a consecutive term of two years imprisonment on those convictions. In his

pleadings, Petitioner raises claims concerning the non-production of a witness and the admission of his prior testimony, the jury instructions, the composition of the jury, and the effectiveness of trial and appellate counsel. For the reasons that follow, the Court denies with prejudice the habeas petition. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II. Facts and Procedural History

Petitioner's convictions arise from the shooting death of Robert Shields in Ecorse, Michigan on March 2, 2010. The testimony at trial revealed that Petitioner shot Shields in the back while they were driving in a van with several other young men after a drug deal went awry. Shields' body was left in the street and the men drove away. The men abandoned the van and fled on foot. Petitioner claimed that he acted in self-defense.

At trial, Durrell Thornton testified that when he was visiting a friend in River Rouge in the morning on March 2, 2010, he met Robert Shields for the first time. Shields said that he wanted to buy some marijuana and crack cocaine. 6/22/10 Trial Tr., pp. 111-12. In response, Thornton called another friend, Antonio Broadnax, in order to contact Petitioner and facilitate the drug deal. *Id.* at 113. Four or five men, including Broadnax, Petitioner, Tony Bouie, and Denzel

Fowler, came to the house in a white van and met with Shields outside. *Id.* at 115-16. Shields came back into the house saying that they did not have what he wanted, but then went back outside. The van also left, but Thornton did not see where Shields went. *Id.* at 117-19. Thornton returned to his own home a short time later. *Id.* at 120.

Tony Bouie testified that he was riding in the van with Broadnax (who was driving), Petitioner, Fowler, and Brandon Crawford on March 2, 2010 smoking some marijuana while others were drinking when Broadnax received a call from Thornton about a drug deal. *Id.* at 147-51. They drove to River Rouge and Thornton and Shields came outside. *Id.* at 150-51. Shields got into the van and sat and talked to Petitioner. *Id.* at 151. The music in the van was loud so he did not hear their conversation. *Id.* at 152. Bouie saw Shields run into the steering wheel, heard a gunshot, and saw that Shields had been shot in the back. *Id.* at 153. Petitioner was holding the gun. *Id.* No one else had a weapon. *Id.* at 157. Broadnax jumped out of the van and Shields fell out of the same door of the van. Broadnax got back into the van and they drove to an alley where they abandoned the van and ran away. *Id.* at 153-54. While fleeing, Bouie, Broadnax, and Petitioner obtained a ride from Julian Agee, and Bouie and Broadnax went to Bouie's house. *Id.* at 155-56. Upon further questioning, Bouie recalled telling the police that he looked back in the van, saw Petitioner with a

gun, and heard him say to Shields, "Put your hands up before I shoot you," *id.* at 166-67, or "Don't move before I shoot you." *Id.* at 195-96. Bouie did not see any physical altercation between Shields and Petitioner before the shooting. 6/23/10 Trial Tr., p. 15.

Bouie also testified that he received a call from Petitioner, who was trying to disguise his voice to sound like Broadnax, after the shooting. Petitioner told him to say the shooting was self-defense. *Id.* at 26-27. Bouie also spoke with Petitioner at the Ecorse Police Department lockup. Petitioner again told him to say it was self-defense and that Shields had a gun. Petitioner also warned him not to go to court because they would all get locked up. *Id.* at 28-29.

Antonio Broadnax testified that he picked up Petitioner and Bouie in his white van on March 2, 2010 and then they picked up Fowler and Crawford. While they were out, Petitioner asked him to drive to a house in River Rouge because he had to handle some business. *Id.* at 77-80. Broadnax later realized Petitioner was going to sell marijuana. When Shields was in the van, Broadnax was driving and not paying much attention to the passengers. He then heard a commotion arise between Petitioner and Shields in the back of the van. *Id.* at 82. Shields lunged toward Broadnax grabbing the steering wheel. Broadnax heard a gunshot and saw that Shields was shot in the lower back. Petitioner had the gun. *Id.* at 83. No one else had a gun that he saw. *Id.* at 84. Broadnax put

the car in park and hopped out of the van. Shields fell out onto the street. *Id.* at 84-85. Broadnax got back into the van, drove around the corner, and parked behind a friend's apartment. They then fled the area on foot. *Id.* at 85-86. Broadnax and Bouie stayed together and were picked up, along with Petitioner, by Julian Agee and taken to Bouie's house. *Id.* at 87-88. Only Broadnax and Bouie went in the house. *Id.* at 88. Broadnax called the police and reported his van stolen, but police officers subsequently came to his house and arrested him. *Id.* at 89. He was taken to a holding cell at the Ecorse Police Department. *Id.* Broadnax was initially charged with the crime, but accepted a deal in which he pleaded guilty to accessory after the fact and agreed to testify at trial. *Id.* at 90-91. Broadnax did not see Petitioner buy or have a gun before the shooting and did not know that he was going to shoot Shields. *Id.* at 92.

Denzel Fowler testified that he was with Crawford when they were picked up by Broadnax, Bouie, and Petitioner in a van on March 2, 2010. 6/24/10 Trial Tr., pp. 59-60. Petitioner asked him if he still had a gun for sale, and Fowler said that he did. Petitioner agreed to buy it for $50.00, paid him the money, and retrieved the gun from where Fowler had hidden it in the bushes. *Id.* at 61-62. He was drinking some liquor and others were smoking marijuana while they drove around and eventually went to a neighborhood in River Rouge. *Id.* at 64. A white man (Shields) got into the van and they drove away. *Id.* at 65. The

music was loud, but Fowler heard some "loudness" from the rear of the van. When he looked back, he saw Shields running up to grab the steering wheel, and then he heard a gunshot. *Id.* at 66. Petitioner had the gun. *Id.* at 67. Broadnax hopped out of the van while it was still rolling and Shields fell out of the van. *Id.* at 67-68. No one else had any weapons. *Id.* at 68. They drove away, parked the van, and ran. *Id.* at 69. He and Crawford went to Crawford's house. *Id.* Fowler went to the police station voluntarily and gave a statement the next day. While he was in lockup, he heard Petitioner telling Bouie to say it was self-defense. *Id.* at 71.

Brandon Crawford did not appear for trial. After hearing from a police officer assigned to the case, the trial court ruled that the prosecution exercised due diligence in attempting to produce him and allowed his preliminary examination testimony to be read into the record. 6/22/10 Trial Tr., pp. 5-20. Crawford testified that he went to Fowler's house in the morning on March 2, 2010 and they were picked up in a white van containing Broadnax, Bouie, and Petitioner. 6/24/10 Trial Tr., p. 109-10. They planned to drink alcohol and smoke marijuana. *Id.* at 111. Petitioner said he had to go "catch a sale" for marijuana and they drove to a neighborhood in River Rouge. *Id.* at 111-12. A white man (Shields) got into the van. There was an argument over the marijuana between Shields and Petitioner. Crawford then heard Shields

"pleading for his life," saw Shields move toward the steering wheel, and heard a gunshot.  *Id.* at 114-15.  He saw Petitioner with the gun.  *Id.* at 116.  Broadnax was so shocked that he hopped out of the van, causing Shields to fall out onto the street.  *Id.* at 119.  At this point, they were in Ecorse.  Broadnax got back into the van and they drove around the corner, exited the van, and ran away.  *Id.* at 120-22.  Crawford and Fowler ran off together to Crawford's house and did not stay with the other men.  *Id.* at 122, 124.  Crawford went to the police station the next day and gave a statement.  *Id.* at 127-28.

Petitioner testified in his own defense at trial.  He acknowledged that he was friends with Broadnax, Bouie, Crawford, and Fowler and was acquainted with Thornton.  *Id.* at 162-63.  He was at the gas station with Bouie in the morning on March 2, 2010 when Broadnax picked them up in his white van.  *Id.* at 164-65.  He said that they always drink, smoke marijuana, and "catch sales" in the van.  *Id.* at 165.  As they were getting in the van, Broadnax received a call about a drug deal.  They drove to a house in River Rouge.  Thornton came out and told Broadnax that he sold Shields a gun and Shields was trying to sell him a cell phone.  *Id.* at 166-67.  Shields got into the van.  Broadnax showed him the marijuana and there was a dispute about its quantity.  *Id.* at 170.  They left  in the van and picked up Fowler and Crawford.  Petitioner saw Fowler pass Crawford a gun.  *Id.* at 173.  They returned to the house where Shields was to

sell him the marijuana. According to Petitioner, no one was drinking or smoking at that time. *Id.* at 176. Shields came outside and got into the van. Shields pulled out his wallet and asked to see the marijuana. *Id.* at 177. Broadnax passed the bag of marijuana to Bouie who showed it to Shields. Shields then took out his own bag of marijuana and said, "This is what weed is supposed to look like." Bouie asked to see Shields' marijuana, Shields gave it to him, and Bouie refused to return it. *Id.* at 178-79. Shields and Bouie argued and tussled. *Id.* at 179-80. During the fight, Shields pulled out a gun. *Id.* at 181. Petitioner then sees Crawford pointing his gun at Shields. Fowler and Bouie were telling Crawford to shoot, but he did not do so. *Id.* at 182-83. Bouie was holding down Shields' shooting hand, but Shields was trying to raise his gun, so Petitioner grabbed the gun from Crawford and shot Shields just as he turned toward the front of the van. *Id.* at 184, 187. Shields grabbed the steering wheel and swerved the van. Broadnax stopped the van and hopped out. Shields then either fell out of the van or was thrown out. *Id.* at 188. Broadnax got back in the van and they drove to an alley. They all exited the van and ran. *Id.* at 189. Petitioner, Broadnax, and Bouie ran away together, flagged down Julian Agee, and obtained a ride to Bouie's house. *Id.* at 190. Petitioner testified that Bouie took Shields' wallet and Fowler took both guns. *Id.* at 191. At Bouie's house, they smoked some marijuana and split the $60 from Shields' wallet between the

three of them. *Id.* at 192. Petitioner was arrested the next day. *Id.* at 193. Petitioner stipulated that he had a prior felony conviction and was unable to possess a firearm at the time of the shooting.

At the close of trial, the jury convicted Petitioner of first-degree felony murder, felon in possession of a firearm, and felony firearm.

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals. Appellate counsel raised the following claims: (1) the trial court violated due process by instructing the jury that it could consider his previous, unnamed conviction when evaluating his testimony and failing to give a limiting instruction on the proper use of that evidence, and (2) trial counsel was ineffective for failing to object to the jury instruction. Petitioner raised the following additional claims in a supplemental brief: (3) the trial court erred in ruling that the prosecution exercised due diligence in attempting to locate witness Brandon Crawford and admitting his preliminary examination testimony, and (4) he was denied his right to a jury drawn from a fair cross-section of the community, equal protection, and the effectiveness of counsel where the jury array only included four African-Americans and counsel objected only verbally. The court denied relief on the claims and affirmed his convictions. *People v. Hinton*, No. 299877, 2012 WL 130423 (Mich. Ct. App. Jan. 17, 2012) (unpublished). Petitioner filed an application for leave to appeal with the

Michigan Supreme Court, which was denied in a standard order. *People v. Hinton*, 492 Mich. 866, 819 N.W.2d 895 (2012).

Petitioner subsequently filed a motion for relief from judgment with the state trial court. He raised the following claims: (1) trial counsel was ineffective for failing to investigate an insanity defense and his capacity to stand trial and (2) appellate counsel was ineffective for raising that issue on direct appeal. The trial court denied relief on those claims finding that Petitioner had not shown good cause or actual prejudice under Michigan Court Rule 6.508(D)(3) as the underlying claim lacked merit. *People v. Hinton*, No. 10-003149-FC (Wayne Co. Cir. Ct. Nov. 25, 2013). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). The court specifically cited Michigan Court Rule 6.508(D)(3)(a) and ruled that Petitioner alleged grounds for relief that could have been raised previously and that he failed to establish good cause for failing to do so. *People v. Hinton*, No. 320097 (Mich. Ct. App. March 18, 2014). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). *People v. Hinton*, 497 Mich. 888, 854 N.W.2d 733 (2014).

Petitioner thereafter filed his federal habeas petition raising the following

claims:

I. The trial court abused its discretion in ruling that the prosecution had shown due diligence in attempting to subpoena, locate and produce Brandon Crawford, and permitting his prior recorded testimony to be read to the jury under MRE 804(A)(5), thus denying Petitioner his state and federal constitutional rights to confrontation.

II. He was denied his constitutional rights to due process of law and a fair trial when the trial judge failed to give the jury a curative or limiting instruction on the use of a prior conviction, the relevance of which was only for consideration of the felon in possession of a firearm charge against him, and actually gave a standard instruction advising the jury that it could consider the conviction in evaluating his testimony, despite the fact that his attorney did not object to the error.

III. He was denied his federal and state constitutional right to (1) an impartial jury drawn from a fair cross-section of the community, (2) equal protection of the law, and (3) the effective assistance of counsel, where there were four African-American persons in the array from which his jury was selected and counsel only objected verbally; he therefore is entitled to an evidentiary hearing to support his claims.

IV. He was denied his state and federal constitutional right to the effective assistance of counsel where defense counsel failed to adequately investigate and pursue his mental illness status prior to trial.

V. Petitioner was denied his right to effective appellate counsel when his appellate counsel failed to raise the prior issue on direct appeal.

Respondent has filed an answer to the petition contending that it should be

denied because the claims are barred by procedural default and/or lack merit.

Petitioner has filed a reply to that answer.

### III.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because

Petitioner filed his habeas petition after the AEDPA's effective date.  *Lindh v.*

*Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim--
>
> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States; or
>
> (2)  resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme Court

cases]' or if it 'confronts a set of facts that are materially indistinguishable from

a decision of [the Supreme] Court and nevertheless arrives at a result different

from [that] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per

curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell*

*v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* In order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles*

*v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Therefore, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, _ U.S. _ 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v.*

*Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Discussion

### A. Due Diligence/Admission of Prior Statement Confrontation Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in ruling that the prosecution exercised due diligence in attempting to produce witness Brandon Crawford and violated his confrontation rights by admitting Crawford's prior preliminary examination testimony into evidence at trial. Respondent contends that this claim lacks merit.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible

unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. The proper inquiry for deciding whether a statement is testimonial is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2005). Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations. *Crawford*, 541 U.S. at 54.

The Supreme Court has found no Confrontation Clause violation by the admission of an unavailable witness's prior testimony when there was an opportunity for cross-examination at the prior proceeding. *See Mattox v. United States*, 156 U.S. 237 (1895) (prior trial testimony); *Barber v. Page*, 390 U.S. 719, 725-26 (1968) (preliminary hearing testimony). A witness is 'unavailable' for purposes of the exception to the confrontation requirement if the prosecution has made a good faith effort to obtain the witness's presence at trial. *Barber*, 390 U.S. at 724-25; *Winn v. Renico*, 175 F. App'x 728, 733 (6th Cir. 2006). "The lengths to which the prosecution must go to produce a witness, however, is a question of reasonableness." *Winn*, 175 F. App'x at 733 (citing *California v. Green*, 399 U.S. 149, 189, n. 22 (1970) (concurring opinion, citing *Barber*)). "The ultimate question is whether the witness is unavailable despite good-faith

efforts undertaken prior to trial to locate and present that witness....The prosecution bears the burden of proof in this regard. *Id.* (citations omitted).

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. Applying the foregoing standards, the court found that the police and the prosecution exercised due diligence in attempting to produce Brandon Crawford at trial such that Petitioner's confrontation rights were not violated. The court explained in relevant part:

> Here, the trial court did not abuse its discretion by finding that the prosecution and police exercised due diligence in attempting to locate and produce Crawford. Lieutenant Salas, the officer in charge, received Crawford's subpoena a couple of weeks before trial. He called Crawford using the same the telephone number he had previously used to contact Crawford, but the number no longer belonged to Crawford. He went to Crawford's home, but nobody answered the door. He returned to the home the following day and left the subpoena with a woman who identified herself as Crawford's aunt. The woman indicated that Crawford was on his way home. After trial began, Salas heard from other witnesses that Crawford might be in Texas. Salas telephoned Crawford using a different phone number that he had been given and left a voice mail message. The voice on the recording sounded like Crawford's voice, but Crawford did not return Salas's call. The police also ran a LEIN search, which revealed that Crawford's last known address was the home at which Salas delivered the subpoena.
>
> Although the prosecution and police could have attempted to serve the subpoena sooner, there is no indication that there was difficulty procuring Crawford's testimony at defendant's preliminary examination, that the prosecution or police knew that Crawford was leaving the state, or that Crawford had an incentive to hide. *See People v. Dye*, 431 Mich. 58, 67, 76; 427 NW2d 501 (1988). A person who identified herself as Crawford's aunt told Salas that Crawford was on his way home, and Salas thus had no reason to

believe that Crawford would not appear at trial. Moreover, when Crawford failed to appear, Salas made further efforts to locate him, including following up on a lead that he was in Texas. Although Salas did not contact Texas authorities, the inquiry is not whether more stringent efforts could have produced the witness. *Bean*, 457 Mich. at 684. Accordingly, the trial court did not abuse its discretion by determining that the prosecution and police exercised due diligence in attempting to locate and produce Crawford, and defendant was not denied his right to confrontation.

*Hinton*, 2012 WL 130423 at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The police and the prosecution made reasonable efforts to produce Brandon Crawford to testify at trial. The prosecution issued a witness subpoena, the police received that subpoena several days before trial, telephoned Crawford at his previously-used number, visited Crawford's home multiple times, and left the subpoena with Crawford's aunt, who said he was on his way home. When Crawford did not appear at trial, the police learned that he might be in Texas, telephoned him at a new number, and left him a message, but he did not return the call. The police also ran a LEIN search, which revealed that Crawford's last known address was where the police left the subpoena. *See* 6/22/10 Hrg. Tr., pp. 5-15. Such efforts, although unsuccessful, were duly diligent. Crawford was thus unavailable for purposes of Petitioner's trial.

The record further indicates that Petitioner had the same motive and

opportunity for questioning Brandon Crawford at the preliminary examination and that he took advantage of that opportunity. *See* 3/18/10 Prelim. Ex. Tr., pp. 18-72. Because Crawford was unavailable at the time of trial and Petitioner had ample opportunity to cross-examine him at the preliminary examination, the trial court did not violate Petitioner's confrontation rights by admitting Crawford's preliminary examination testimony. Habeas relief is not warranted on this claim.

## B. Jury Instruction Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court instructed the jury that it could consider his prior, unnamed conviction in evaluating his testimony and failed to instruct the jury about the proper consideration of that evidence. Respondent contends that this claim is waived and therefore barred by procedural default and that it lacks merit.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d

533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last explained state court ruling is used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on this jury instruction claim. In denying relief, the court relied upon a state procedural bar – Petitioner's agreement to the jury instructions as given – which the court found to constitute a waiver of this issue. *Hinton*, 2012 WL 130423 at *1-2. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130, 138 (1999); *People v. Stanaway,* 446 Mich. 643, 687, 521 N.W.2d 557, 579 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir.

2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied relief on this claim based upon a procedural default – Petitioner's agreement with the jury instructions as given and his failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated the ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

In this case, Petitioner alleges ineffective assistance of trial counsel as cause to excuse the failure to object at trial. Petitioner, however, cannot

establish that he was prejudiced by trial counsel's conduct so as to establish cause, nor can he establish actual prejudice to excuse the procedural default, because the underlying jury instruction claim does not warrant relief.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Jones v. United States*, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996). The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief – the failure to instruct must have rendered the trial fundamentally unfair. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72.

In reviewing this claim for plain error, the Michigan Court of Appeals ruled

that the trial court plainly erred by instructing the jurors that they could consider Petitioner's prior criminal conviction in evaluating his testimony (as opposed to limiting their consideration to the felon in possession charge). *Hinton*, 2012 WL 130423 at *2-3. The court, however, further concluded that Petitioner failed to establish prejudice due to the strength of the evidence against him, particularly the testimony from the four companions in the van who stated that Petitioner was the only person with a gun and that no struggle or fight occurred before the shooting and the evidence that the victim was shot in the back. *Id.* at 3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1] As an initial matter, the Court notes that the Michigan Court of Appeals' ruling that the trial court's instruction was erroneous under Michigan law is controlling on habeas review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court on habeas review"). Nonetheless, the trial court's error did not render the trial fundamentally unfair. The jury instructions as a whole were sufficient to inform the jury of the elements of the offenses, as well as Petitioner's claim of self-defense and other matters to relevant to his interests.

---

[1]The Court would reach the same conclusion under a *de novo* standard of review.

Even if the error rises to the level of a constitutional violation, it was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that Brecht is "always the test" in the Sixth Circuit). Jury instructional errors, like other trial errors, are subject to harmless error analysis. *See Hedgpeth v. Pulido*, 555 U.S. 57, 61-62 (2008) (instructing jury on multiple theories of guilt, one of which is improper, is subject to harmless error analysis); *Neder v. United States*, 527 U.S. 1, 9-11 (1999) (jury instruction that omits element of offense is subject to harmless error review). In this case, the evidence of Petitioner's guilt was significant. All of the other people in the van testified that Petitioner pulled a gun and threatened to kill Shields, that Petitioner shot Shields in the back as he moved toward the front of the van, and that there was no physical altercation before the shooting. There was no dispute that Shields was shot in the back. Petitioner admitted shooting Shields, although he claimed that he acted in self-defense. The prosecution also presented evidence that Petitioner tried to convince his friends to tell the police

that Shields had a gun and tried to get them to not appear at trial. Such evidence provided significant evidence of Petitioner's guilt. The trial court's error in instructing the jury did not have a substantial or injurious effect or influence on the verdict in this case.

Lastly, Petitioner fails to demonstrate that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner makes no such showing. This claim is barred by procedural default, lacks merit, and does not warrant habeas relief.[2]

## C. Jury Selection Claims

---

[2]Petitioner does not appear to raise the issue of trial counsel's effectiveness as a distinct issue on habeas review. Nonetheless, any such claim does not warrant habeas relief. As discussed *infra*, to prevail on an ineffective assistance of counsel claim, a habeas petitioner must show that counsel erred and that he was prejudiced by counsel's conduct. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Michigan Court of Appeals denied relief on this claim finding that Petitioner could not establish that he was prejudiced by trial counsel's conduct due to the significant evidence of guilt presented at trial. That decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Given that the underlying instructional error was harmless, Petitioner cannot establish that he was prejudiced by trial counsel's failure to object.

Petitioner next asserts that he is entitled to habeas relief because his constitutional rights to an impartial jury, equal protection, and the effective assistance of counsel were denied where the jury array only included three or four African-Americans (with only one on his jury) and trial counsel only objected verbally. Respondent contends that these claims lack merit.

### 1. Fair Cross-Section Claim

Petitioner asserts that he was denied his right to have a jury drawn from a fair cross-section of the community. Although a criminal defendant has no right to a *petit* jury composed in whole or in part of persons of his or her own race, he or she does have the right to be tried by a jury whose members are selected by non-discriminatory criteria. *Powers v. Ohio*, 499 U.S. 400, 404 (1991); *Taylor v. Louisiana*, 419 U.S. 522, 527-28 (1975). The Sixth Amendment to the United States Constitution requires that the venire from which a jury is selected represents a fair cross-section of the community. *Berghuis v. Smith*, 559 U.S. 314, 319 (2010). A defendant may not challenge the makeup of a jury merely because no members of his or her race are on a jury, but must prove that his or her race has been systematically excluded. *Apocoda v. Oregon*, 406 U.S. 404, 413 (1972); *United States v. Mack*, 159 F.3d 208, 219 (6th Cir. 1998). To establish a prima facie violation of the fair cross-section requirement, a criminal defendant must show that: 1) the group

alleged to be excluded is a distinctive group in the community; 2) the representation of this group in the venire from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) this under-representation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979); *see also Berghuis*, 559 U.S. at 319.

Applying the foregoing standards, the Michigan Court of Appeals denied relief on this claim finding that Petitioner failed to satisfy the second and third prongs of the test and therefore failed to establish that there was a demonstrated problem in the Wayne County jury selection process that resulted in the systematic exclusion of African-Americans from the jury venire. *Hinton*, 2012 WL 130423 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. While Petitioner meets the first prong of the test, he fails to satisfy the other two prongs. Petitioner alleges that there were only three or four African-Americans in his 42-person jury pool (and only one on his jury), even though African-Americans comprised 40% of the population in Wayne County at the time of his 2010 trial. Petitioner cites a 2005 Detroit News article in support of this claim. According to Petitioner, that article reported that Detroit was 82% African-American and

Wayne County was 42% African-American, but only 27% of Wayne County jurors were African-Americans. Petitioner's allegation of under-representation in his case, by itself, is insufficient to satisfy the second element. *See United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008) ("defendants must show more than that their particular panel was unrepresentative"); *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998) (same); *Ford v. Seabold*, 841 F.2d 677, 685 (6th Cir. 1988) (two samples of under-representation was insufficient); *Gardner v. Kapture*, 261 F. Supp. 2d 793, 802 (E.D. Mich. 2003) ("a one-time example of under-representation of a distinctive group wholly fails to meet the systematic exclusion element"). Additionally, Petitioner's reliance upon a 2005 newspaper article to establish this element with regard to his 2010 trial is misplaced. *See, e.g,. Miller v. Curtin*, No. 1:06-cv-525, 2010 WL 748220, *1 (W.D. Mich. March 3, 2010) (adopting magistrate judge's report in part and finding that 2006 newspaper article was not relevant to 2004 proceedings).

Nonetheless, even assuming that Petitioner's allegations are sufficient to meet the first and the second requirements, he fails to allege any facts which show that the under-representation of African-Americans was the result of systematic exclusion. Petitioner's failure to present admissible evidence supporting a prima facie violation of the fair cross-section requirement defeats his claim. *See Allen*, 160 F.3d at 1103-04 (no Sixth Amendment fair

cross-section violation where defendants failed to meet second and third prongs of test); *see also United States v. Suggs*, 531 F. App'x 609, 619 (6th Cir. 2013) (jury composition claim failed because defendant did not present evidence that the under-representation of African-Americans was due to systemic exclusion); *United States v. Martin*, 516 F. App'x 433, 451 (6th Cir. 2013) (same). "More than mere numbers must be provided to establish that African-Americans are systematically under-represented in the [jury] venire." *United States v. Greene*, 971 F. Supp. 1117, 1128 (E.D. Mich. 1997). Factors such as the nature of the process by which jury lists are composed and the length of time of under-representation, together with the strength of the evidence that purports to establish unfair and unreasonable representation, also need to be examined. *Id.* (citing *Ford, supra*). Petitioner presents no such facts. Conclusory allegations are insufficient to justify habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). Petitioner fails to establish that African-Americans were systematically excluded from the jury selection process

in Wayne County at the time of his trial.  Habeas relief is not warranted on this claim.

## 2.  Equal Protection Claim

Petitioner also asserts that the jury selection process violated his equal protection rights under the Fifth and Fourteenth Amendments.  To prevail on such a claim, a criminal defendant must show that the procedure employed resulted in substantial under-representation of his or her race or of the identifiable group to which he or she belongs.  The elements of such a claim are:  (1) the excluded group is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied,  (2) the degree of under-representation proven by comparing the proportion of the group in the total population to the proportion called to serve as  jurors over a significant period of time, and (3) the selection procedure is susceptible to abuse or is not racially-neutral.  *Castaneda v. Partida*, 430 U.S. 482, 494 (1977); *United States v. Ovalle*, 136 F.3d 1092, 1104 (6th Cir. 1998).

The Michigan Court of Appeals denied relief on this claim finding that Petitioner failed to establish an equal protection violation.  In particular, the court ruled that he "failed to show under-representation over a significant period or that the selection process is susceptible to abuse or not racially-neutral" as previously discussed.  *Hinton*, 2012 WL 130423 at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  As with the fair cross-section claim, Petitioner satisfies the first element, but fails to satisfy the second and/or third elements.  Petitioner fails to allege sufficient facts to support his claim of under-representation over a significant period (particularly near the time of his 2010 trial) and fails to allege facts which show that the jury selection process in Wayne County is susceptible to abuse or not racially-neutral.  His allegations are conclusory and insufficient to warrant habeas relief. *See Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733.  Habeas relief is not warranted on this claim.

### 3.  Ineffective Assistance of Counsel Claim

Petitioner relatedly asserts that trial counsel was ineffective for only objecting to the jury selection process verbally and not doing so in writing.  The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as

counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

The Michigan Court of Appeals denied relief on this claim finding that Petitioner could not establish that trial counsel was ineffective because Michigan law did not require that an objection to the jury selection process be in writing. *Hinton*, 2012 WL 130423 at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Given that trial counsel made a verbal objection and there is no requirement that an objection be in writing, Petitioner cannot establish that trial counsel erred by only objecting verbally. Given the state court's determination, as well as this Court's determination, that the underlying jury selection claims lack merit, Petitioner cannot establish that trial

counsel erred and/or that he was prejudiced by counsel's conduct. Counsel cannot be deemed deficient for failing to make a meritless argument or a futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Habeas relief is not warranted on this claim.

### D. Ineffective Assistance of Trial Counsel Claim

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to investigate his mental health status to determine his competency to stand trial and/or to pursue an insanity defense at trial. Respondent contends that this claim lacks merit.

As noted, federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright*, 433 U.S. at 85-87. The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White*, 431 F.3d at 524 ; *see also Howard*, 405 F.3d at 477; *Coleman*, 244 F.3d at 539. The last explained state court judgment should be used to make this determination. *Ylst*, 501 U.S. at 803-05. If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing

court relied upon the last reasoned opinion. *Id.*

Petitioner first presented this claim in his motion for relief from judgment on state collateral review. The Michigan Supreme Court, the last state court to rule on the matter, denied leave to appeal pursuant to Michigan Court Rule 6.508(D). That rule provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. MICH. CT. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the lower court's decision to determine the basis for the denial of state post-conviction relief.

The Michigan Court of Appeals denied relief on this claim on procedural grounds by finding that Petitioner could have raised the claim on direct appeal and that he failed to establish good cause under Michigan Court Rule

6.508(D)(3) for his failure to do so. *Hinton*, No. 320097 at *1. The trial court also denied relief pursuant to Michigan Court Rule 6.508(D)(3) finding that Petitioner could not establish good cause or actual prejudice because the claim lacks merit. *Hinton*, No. 10-003149-FC at *2-6. The state courts clearly relied upon a procedural default to deny Petitioner relief on this claim. Accordingly, this claim is procedurally defaulted.

Again, as discussed, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750-51; *Gravley*, 87 F.3d at 784-85. Petitioner alleges ineffective assistance of appellate counsel as cause to excuse this procedural default. Petitioner, however, cannot establish cause or actual prejudice as this claim lacks merit.[3]

As discussed, to prevail on an ineffective assistance of counsel claim, a

---

[3]The Court also notes that Petitioner filed a supplemental pro per brief raising additional issues not raised by appellate counsel on direct appeal in the state courts. Petitioner did not present this defaulted ineffective assistance of trial counsel claim, which concerns his own mental health status, at that time. Petitioner offers no explanation as to why he did not do so. Consequently, for this additional reason, he fails to establish cause to excuse the procedural default of this claim. *See Rockwell v. Palmer*, 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008) (petitioner failed to show cause for his failure to raise an ineffective assistance of trial counsel claim on direct appeal where he filed two briefs on his own behalf raising claims that had not been raised by appellate counsel and offered no reason for his failure to raise the ineffective assistance of counsel claim at the same time).

habeas petitioner must prove that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689-90. As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.*

A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner asserts that trial counsel should have investigated his mental

health records in order to challenge his competency to stand trial and/or to pursue an insanity defense at trial. In reviewing this claim on collateral review, the state trial court ruled that Petitioner failed to establish that trial counsel was ineffective. The court explained in relevant part:

> In support of his assertion that an insanity defense should have been investigated, defendant offers that he had a psychological exam at the Clinic of Child Study, and that he had been treated for depression five years prior to the offense and also in the Wayne County Jail while he awaited trial. Notwithstanding such occurrences, defendant has not established that counsel's failure to investigate the *"possibility* of using an insanity defense" denied him a substantial defense, i.e., a defense that might have made a difference in the outcome of the trial. *People v Foster*, 77 Mich App 604, 609 (1977).
>
> Further, Michigan law has established that evidence showing a defendant suffered from mental illness, short of insanity, "cannot be used to avoid or reduce criminal responsibility by negating specific intent." *People v Carpenter*, 464 Mich 223, 237 (2001). It bears noting that the facts that defendant raises in support of the "possibility of using an insanity defense" fail to reach the above mentioned standard as set forth in *Carpenter, supra*.
>
> Moreover, whether an insanity defense should be advanced on behalf of a client is an issue of trial strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will is assess counsel's competence with the benefit of hindsight. *People v Rockey*, 237 Mich App 74, 76-77 (1999).
>
> As it relates to defendant's capacity to stand trial, there was no indication that due to defendant's mental condition he was unable to understand the nature of and object of the proceedings against him or of assisting in his defense in a rational matter. Defendant provided coherent testimony during trial.

*Hinton*, No. 10-003149-FC, 11/25/13 Opinion at *3-4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[4]  It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary.  *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence."  *Towns*, 395 F.3d at 258.  That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy.  When making strategic decisions, counsel's conduct must be reasonable.  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.  The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense.  *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Petitioner fails to show that trial counsel was ineffective for failing to investigate or present an insanity defense.  The record does not indicate that Petitioner was legally insane at the time of the offense.  Under Michigan law, a

---

[4]The Court would reach the same result under a *de novo* standard of review.

criminal defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. To establish such a defense, the defendant must show that, at the time of the offense, he had a mental illness or was mentally retarded and that, as a result, he lacked the substantial capacity either to appreciate the nature and quality or the wrongfulness of his conduct or conform his conduct to the requirements of the law. *See* Mich. Comp. Laws § 768.21a; *People v. Carpenter*, 464 Mich. 223, 230-31, 627 N.W.2d 276 (2001). While the record indicates that Petitioner received some mental health treatment as a child and while incarcerated, the record does not show that he is mentally retarded or that he experienced mental illness symptoms which prevented him from understanding the nature or wrongfulness of his conduct or from conforming his conduct to the law at the time of the shooting. Petitioner has simply not submitted reports which indicate that an insanity defense was viable or would have prevailed at trial. As discussed, conclusory allegations without evidentiary support do not provide a basis for habeas relief or an evidentiary hearing in federal court. *See Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733. Petitioner fails to establish that counsel erred or that he was deprived of a substantial defense.

As to the issue of competency, federal constitutional law clearly

establishes that a criminal defendant may not be tried unless he or she is competent. *Indiana v. Edwards*, 554 U.S. 164, 169-70 (2008); *Godinez v. Moran*, 509 U.S. 389, 396 (1993). The standard for competence to stand trial is whether the defendant has (1) sufficient present ability to consult with a lawyer and (2) a rational and factual understanding of the proceedings against him or her. *Id.* at 396-98. Due process is violated by a trial court's failure to hold a competency hearing where there is substantial evidence of a defendant's incompetency. *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966). The question for a reviewing court in such a case is whether a reasonable judge, situated as was the trial court judge, should have experienced a "bona fide doubt" about the defendant's competency. *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004) (citing *Drope v. Missouri*, 420 U.S. 162, 173 (1975)); *see also Cowans v. Bagley*, 639 F.3d 241, 247 (6th Cir. 2011). Silence by a defendant and defense counsel on the issue of competency at the time of trial is significant evidence that there is no bona fide doubt about the defendant's competency. *United States v. Gignac*, 301 F. App'x 471, 475 (6th Cir. 2008).

Having reviewed the record, this Court concludes that trial counsel did not err in failing to further investigate Petitioner's mental health records and challenge his competency. A reasonable defense attorney (or reasonable judge sitting as the trial judge) would not have experienced a bona fide doubt

as to Petitioner's competency at the time of trial. While Petitioner may have had some mental health treatment as a child and experienced depression while incarcerated, the record is devoid of evidence that he was incompetent at the time of trial and unable to consult with defense counsel and understand his criminal proceedings. To the contrary, the record indicates that Petitioner consulted with counsel, participated in his defense, and testified coherently at trial. Petitioner also offers no facts which create a real and substantial doubt as to his competency or sanity so as to warrant an evidentiary hearing, *see Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 653 (E.D. Mich. 2002) (citing cases), or other relief from this Court. Petitioner fails to show that trial counsel erred or that he was prejudiced by counsel's conduct. Counsel cannot be deemed deficient for failing to make meritless arguments. *See Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225.

Finally, as discussed *supra*, Petitioner fails to establish that a fundamental miscarriage of justice has occurred as he fails to present new reliable evidence of his actual innocence. *Bousley*, 523 U.S. at 624; *Schlup*, 513 U.S. at 324-27. This claim is barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

## E. Ineffective Assistance of Appellate Counsel Claim

Petitioner relatedly asserts that appellate counsel was ineffective for

failing to raise the foregoing ineffective assistance of trial counsel claim on direct appeal.  Respondent contends that this claim lacks merit.

In order to establish ineffective assistance of appellate counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *See Strickland*, 466 U.S. at 687; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  Judicial scrutiny of counsel's performance is "highly deferential."  *Strickland*, 466 U.S. at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of

effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

The state trial court considered this claim on collateral review and concluded that Petitioner failed to establish that appellate counsel was ineffective because counsel raised significant issues on appeal and the newly-raised ineffective assistance of trial counsel issue lacked merit. *See Hinton*, No. 10-003149-FC at *3-4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner fails to show that by omitting the ineffective assistance of trial counsel claim presented in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate

counsel presented significant issues on direct appeal, including a jury instruction claim (where plain error was found) and a related ineffective assistance of trial counsel claim. Petitioner fails to show that appellate counsel's strategy in presenting those claims and not raising other claims was deficient or unreasonable.

Additionally, given the state court's and this Court's determination that the underlying ineffective assistance of trial counsel claim lacks merit, Petitioner cannot establish that appellate counsel erred and/or that he was prejudiced by appellate counsel's conduct. Appellate counsel cannot be deemed ineffective for failing to raise an issue that lacks merit. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Petitioner fails to establish that appellate counsel was ineffective. Habeas relief is not warranted on this claim.

## F.  State Law Claims

Lastly, Petitioner asserts that he is entitled to habeas relief based upon perceived violations of Michigan law relative to several of the foregoing issues. To the extent that Petitioner alleges violations of the Michigan Constitution or other Michigan law, he fails to state a cognizable habeas claim. A federal court may grant a writ of habeas corpus only on the ground that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a). Consequently, it is well-settled that federal habeas relief does not lie for perceived state law errors. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Petitioner fails to state a claim upon which habeas relief may be granted as to any state law issues. Habeas relief is not warranted.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court

denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85. Having considered the matter, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court finds that an appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: March 27, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager